UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

BILL GILBERT,

    Plaintiff,

vs.                                                   CV 00-J-1703-J

ALTA HEALTH & LIFE
INSURANCE COMPANY, et al.,

    Defendants.

ENTERED

NOV 1 6 2000

## MEMORANDUM OPINION

This cause comes before this court on defendants' motion to dismiss state law claims (doc. 7). This case was originally filed in the Circuit Court of Marion County, Alabama. Defendants removed the case to this court alleging both diversity and federal question jurisdiction (doc. 1).

### FACTUAL BACKGROUND

In a light most favorable to plaintiff the facts are as follows. Plaintiff Bill Gilbert is the sole shareholder of Winfield Monument Company, Inc. (Winfield Monument). He obtained the insurance policy "Group Plan No. L 50815" to provide health coverage for himself and for his wife and son who are employees of Winfield Monument. The policy was issued to Winfield Monument and premiums were paid by Winfield Monument.

Plaintiff was hospitalized at Carraway Northwest Hospital in October, 1999. He

incurred $10,729.00 in medical bills. Plaintiff properly filed claims for coverage under the policy. The defendants denied plaintiff's claims. Carraway Northwest Hospital has entered suit against plaintiff to collect the amount owed and has informed plaintiff that the account has been referred to a collection agency or lawyer. The plaintiff has suffered mental distress as a result of defendants refusal to pay.

Plaintiff filed suit in Marion County Circuit Court alleging breach of contract and bad faith refusal to pay. Defendants removed the case to this Court under both diversity and federal question jurisdiction (doc. 1). Defendants then filed a motion to dismiss plaintiff's state law claims due to ERISA[1] preemption. A hearing was held on this motion.

## LEGAL ANALYSIS

Defendants argue plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA) and are therefore due to be dismissed. ERISA preempts state laws "insofar as they may . . . relate to any covered employee benefit plan." 29 U.S.C. §1144(a). An "employment benefit plan" is "(1) a plan, fund or program (2) established or maintained (3) by an employer . . . (4) for the purpose of providing . . . benefits . . . (5) to participants or their beneficiaries." *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir. 1982).

Plaintiff offers three theories why his state law claims should not be dismissed. He claims res judicata bars this court from deciding whether ERISA preempts the state law

---

[1] 29 U.S.C. §§1001, *et seq.*

claims. His second argument is that he is not an "employee" for purposes of ERISA preemption. Plaintiff's final contention is that the state law claim for bad faith refusal to pay benefits is not preempted due to ERISA's savings clause found in 29 U.S.C. §1144 (b)(2)(A).

## Res Judicata

The first issue to address is whether the court can decide if ERISA preempts the present state law claims. Plaintiff argues that res judicata bars this court from the ERISA issue. The doctrine of res judicata, or claim preclusion, bars claims which were or could have been adjudicated in a previous action. *Dairyland Insurance Company v. Jackson*, 566 So.2d 723, 725 (Ala. 1990). The requisite elements to establish res judicata are: "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits." *Jackson*, 556 So. 2d at 725.

The res judicata elements are met, according to plaintiff, because the plan for Winfield Monument has been the subject of a prior ERISA preemption attempt. In *Barbara Venita Gilbert v. Alta Health & Life Ins. Co.* the present plaintiff's wife sued the current defendants for coverage under the plan. The case was removed to federal court. The Honorable Seybourn H. Lynne then remanded the case to state court. CV-99-2837-S (N.D. Ala. June 30, 2000). According to plaintiff, Judge Lynne implicitly held that the plan was not subject to ERISA preemption.

Plaintiff is apparently confusing res judicata or claim preclusion, with collateral

3

estoppel or issue preclusion.² The elements of collateral estoppel or issue preclusion are: "(1) the issue in question is identical to one presented in a prior action; (2) the issue was litigated in the prior action; (3) the issue was determined in the prior action; (4) the determination of the issue was necessary to the judgment in the prior action; and (5) there is a substantial identity of parties in the two actions." *Ex Parte Ford Motor Credit Company* at \*3. This is the more appropriate argument for plaintiff in light of his position that Judge Lynne implicitly found that ERISA did not preempt state law claims made in relation to the Winfield Monument plan. If Judge Lynne did in fact make such an implicit finding this finding would regard an issue and not a claim.

Regardless of which doctrine is the appropriate argument, neither will bar this court from determining if ERISA preempts these claims. Res judicata does not apply

---

²The court notes that plaintiff's confusion is not without some justification. The Alabama Supreme Court has admittedly chosen not to clarify this issue. For example in *Ex Parte Ford Motor Credit Company,* the Alabama Supreme Court notes "[t]here is some dispute in Alabama cases whether 'issue preclusion' and 'claim preclusion' are separate doctrines or are both subsets of the doctrine of res judicata." 2000 WL 641115, \*8 n.1 (Ala.). The court did not remedy this dispute but chose"[f]or clarity's sake, [to] refer to the preclusion doctrine applicable in this case simply as 'issue preclusion'." *Id.*

The Alabama Supreme Court has avoided this issue before in yet another footnote: "There is a line of cases holding or implying that . . . res judicata consists of two subsets: claim preclusion and issue preclusion. . . . Another line of cases treats res judicata as claim preclusion and as a different doctrine from collateral estoppel or issue preclusion. It is not necessary for us to resolve that conflict because defendants . . . treated res judicata as claim preclusion only . . ." *Equity Resources Management, Inc. v. Vinson,* 723 So.2d 634, 635 n.2 (Ala. 1998).

Despite this confusion and "dispute", these cases clearly delineate different requisite elements for the two doctrines. These elements appear self explanatory as they require "claim" adjudication by a "judgment on the merits" to establish res judicata but only "issue" determination for collateral estoppel. *See Ex Parte Ford Motor Credit Company,* 2000 WL 641115 (Ala.); *Equity Resources Management, Inc. v. Vinson,* 723 So.2d 634 (Ala. 1998); *Dairyland Insurance Company v. Jackson,* 566 So.2d 723, 725 (Ala. 1990).

because Judge Lynne's remand order is obviously not a "prior judgement on the merits" as is required to establish the res judicata bar. *See Jackson*, 556 So. 2d at 725. Collateral estoppel will not bar this court from determining whether ERISA preemption applies to this plan because it is unclear whether the ERISA preemption issue was actually determined in *Barbara Venita Gilbert v. Alta Health & Life Ins. Co.*.

Plaintiff argues that by remanding the case to state court Judge Lynne must have held that ERISA did not preempt the Winfield Monument plan. However, other arguments for remand were offered in *Barbara Venita Gilbert v. Alta Health & Life Ins. Co.*. One additional argument was that the case was due to be remanded because the case had been improperly removed by a third-party defendant. Judge Lynne's remand order does not specify the ground or reason for remanding the action. Therefore it is unclear whether the ERISA preemption issue was actually "determined in the prior action". Because an independent ground for remand existed, it can not be stated that Judge Lynne actually ruled on the ERISA issue. Plaintiff's argument for a preclusive bar must fail. *Ex Parte Ford Motor Credit Company* at *3.

### ERISA Application to Plaintiff

The court must now determine whether ERISA relates to the Winfield Monument plan and preempts the plaintiff's state law claims. ERISA preempts state laws "insofar as they may . . . relate to any covered employee benefit plan." 29 U.S.C. §1144(a). An "employment benefit plan" is "(1) a plan, fund or program (2) established or maintained (3) by an employer . . . (4) for the purpose of providing . . . benefits . . . (5) to participants

5

or their beneficiaries." *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir. 1982). "[I]n order to establish an ERISA employee welfare benefit plan, the plan must provide benefits to at least one employee, not including an employee who is also the owner of the business in question." *Slamen v. Paul Revere Life Ins. Co.,* 166 F.3d 1102, 1104 (11th Cir. 1999).

Plaintiff does not dispute that the plan at issue is an ERISA plan. He argues that ERISA does not apply to the claims of a sole stockholder of a corporation that sponsors an ERISA plan. The basis for plaintiff's argument is 29 C.F.R. §2510.3-3(c)(1): "For purposes of this section: An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse." (1998). Plaintiff argues that ERISA only preempts employee claims and not claims made by employers.

The problem with plaintiff's argument is that 29 C.F.R. §2510.3-3(c)(1) does not stand for the proposition that sole shareholders or owners of businesses are not subject to ERISA preemption or that they can not be participants in an ERISA employee benefits welfare plan. That regulation's purpose is for determining whether an ERISA plan exists. *Slamen* 166 F.3d at 1105, 1106 *quoting Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404, 407 (9th Cir. 1995) ("Neither an owner of a business nor a partner in a partnership can constitute an 'employee' for purposes of determining the existence of an ERISA plan") . 29 C.F.R. §2510.3-3(b) (1998) limits what is an "employee benefit

plan" by excluding plans which do not have any employees as participants. 29 C.F.R. §2510.3-3(c)(1) (1998) then defines who are employees in order to establish an "employee benefit plan".

The reason for the employee benefit plan limitation goes to the very purpose of ERISA. "ERISA excludes employer benefit plans from its broad scope because 'when the employee and employer are one and the same, there is little need to regulate plan administration.'" *Slamen* 166 F.3d at 1105, 1106 *quoting Meredith v. Time Ins. Co.,* 980 F.2d 352, 358 (5th Cir. 1993). This is why a plan must provide benefits to at least one employee in addition to those who are owners of the business, in order to establish an ERISA employee welfare benefit plan. *See Slamen,* 166 F.3d at 1105.

The *Slamen* decision illustrates how an employer or sole owner, once an ERISA plan is established, can be a participant in an ERISA plan and subject to ERISA preemption. 166 F.3d 1102. In *Slamen,* the plaintiff was the sole shareholder of a business which had an employee welfare benefits plan. *Id.,* at 1103, 1104. He purchased a separate benefits policy for himself with the business' funds. *Id.* The court held that because this policy was separate from the plan for the employees, the separate policy was not an ERISA welfare benefits plan and was not subject to ERISA preemption. *Id.,* at 1106. If this plan had provided benefits for another employee other than the plaintiff-owner, the plan would have been "governed by ERISA". *Id.,* at 1106 n. 4. The reason the plaintiff was not subject to ERISA preemption was "because *all the benefits* flow to the owner."*Id* (emphasis added).

7

The statute itself makes clear that a "beneficiary" is not limited to "employees" but simply includes any person "by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. §1002(8). This Circuit has interpreted that language to include business owners or corporate shareholders as beneficiaries. *Englehardt, M.D. v. Paul Revere Life Insurance Company*, 139 F.3d 1346, 1351 ("[Plaintiff's] status as a shareholder does not preclude him from being a beneficiary under the ERISA plan."). One of the cases the *Englehardt* court cited for this proposition was *Robinson v. Linomaz,* 58 F.3d 365 (8th Cir. 1995). The *Robinson* decision held that sole shareholders could be ERISA plan beneficiaries. *Robinson,* 58 F.3d at 370. The *Englehardt* court emphasized that holding by parenthetically summarizing the *Robinson* decision: "sole shareholders of corporation were beneficiaries of ERISA plan". *Englehardt,* at 1351.

The Winfield Monument plan is an employee benefits welfare plan for purposes of ERISA. The plaintiff, even though he is the sole shareholder of Winfield Monument, is a beneficiary of the Winfield Monument plan. Therefore he is subject to ERISA preemption.

**Plaintiff's Claim for Bad Faith Refusal to Pay and the ERISA Savings Clause**

Plaintiff's final argument is that his claim for bad faith refusal is exempt from ERISA due to the ERISA savings clause found in 29 U.S.C. §1144 (b)(2)(A). According to 29 U.S.C. §1144 (b)(2)(A): "[N]othing in this sub-chapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance . . .". The

court therefore must determine whether Alabama's tort of bad faith refusal to pay benefits, codified in Ala. Code §27-12-24, is a law "which regulates insurance".

The Supreme Court recently addressed the ERISA savings clause and delineated the proper analytical process to follow when determining whether a state law regulates insurance. *Unum Life Insurance Company v. Ward,* 526 U.S. 358, 119 S.Ct. 1380 (1999). The first step in this process is to determine whether common-sense suggests the questioned law regulates insurance. *Ward,* 119 S.Ct. at 1386. This common-sense step is the most important when deciding if a law falls within the savings clause. *See Ward,* 119 S.Ct. at 1389; *Kentucky Association of Health Plans, Inc. v. Nichols, III,* 227 F.3d 352, 364 (6th Cir. 2000) ("Ward makes it clear that the most important aspect of the test is whether from a common sense view. . . the contested statute regulates insurance."); *Moran v. Rush Prudential HMO, Inc.,* 2000 WL 1551659 *9 (7th Cir. 2000).

Common sense likewise dictates the conclusion that Alabama's law for bad faith refusal to pay benefits regulates insurance. First, the tort for bad faith refusal to pay benefits has been codified in *Ala. Code* §27-12-24. As this district's Judge Acker recently observed this is "within the 'insurance' title of the Code." *See Hill v. Blue Cross Blue Shield of Alabama,* 2000 WL 1522841, *3 (N.D.Ala. 2000). Secondly, the Alabama Pattern Jury Instructions regarding the tort for bad faith refusal to pay are contained under its "Insurance" chapter. APJI Civil 20.37. These instructions start "[e]very insurance policy contains a duty implied by law of good faith and fair dealing . . .". APJI Civil 20.37. The first element required before finding liability under bad faith refusal to pay

benefits is "[t]hat there was an insurance contract between the parties." *Id.* The second, third, and fifth element of this law further limits the law's applicability to claims against a "defendant insurer". *Id.* The Supreme Court of Alabama has clearly limited the cause of action to claims regarding insurance policies: "[W]e have consistently refused to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance policy cases." *American Cast Iron Pipe Co. v. Williams,* 591 So.2d 854, 857 (Ala. 1991). This court agrees with Judge Acker's observation that "the only targets for the tort of bad faith in Alabama are insurance companies" and finds that under a common-sense analysis, the Alabama tort of bad faith for refusal to pay benefits clearly regulates insurance. *Hill,* at *3.

The second analytical step is to consider three factors which are used to determine if a questioned regulation fits within the "business of insurance" as that term is used in the McCarran-Ferguson Act: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Ward,* 119 S.Ct. at 1386 (internal citations omitted). These three factors are not determinative nor required for finding the challenged law regulates insurance. *Id.,* at 1389. These factors are merely "relevant" as "checking points or 'guide posts'" to verify the important common-sense conclusion. *Id.*

The common-sense conclusion is indeed verified when these factors are applied to the Alabama tort of bad faith refusal to pay benefits. The Court in *Ward*, chose to ignore

the first McCarran-Ferguson factor "because the remaining McCarran-Ferguson factors, verifying the common-sense view, are securely satisfied." *Id.* This court will follow that lead and not address whether the law of bad faith "has the effect of transferring or spreading a policyholder's risk" because the remaining factors are sufficient for determining whether this law regulates the "business of insurance."

The second McCarran-Ferguson factor is whether the questioned law serves as "an integral part of the policy relationship between the insurer and the insured." *Id.* In *Ward*, California's rule requiring an insurer to prove prejudice before enforcing a "timeliness-of-claim" provision, was determined to be an integral part of the policy relationship. *Id.,* at 1389, 1390. This notice-prejudice rule was integral because it "'dictate[d] the terms of the relationship'" between the insured and insurer. *Id.* The Court explained that even if the questioned law did not affect the substantive terms of the policy but merely the administration of policies it could still be considered integral. *Id.,* n. 5.

Alabama's requirement of good faith on behalf of insurers is clearly an integral part of policy relationships. It goes to the very essence of the relationship between insured and insurer because it actually dictates the insurer's behavior. This changes the bargain between insured and insurer by providing a clear limitation on the insurer and leveling the proverbial "playing field" of insurance to one of good faith.

The third McCarran-Ferguson factor asks whether the law is limited to entities within the insurance industry. *Id.* As previously discussed, Alabama's bad faith refusal to pay benefits is by definition limited to the insurance industry due to the insurance

11

contract and a "defendant insurer" requirement. APJI Civil 20.37. There have been attempts to expand this law to other types of defendants and industries but the Alabama courts have emphatically thwarted these attempts by explicitly limiting the tort to the insurance industry. *See American Cast Iron Pipe Co. v. Williams,* 591 So.2d 854, 857 (Ala. 1991). These two McCarran-Ferguson factors indeed verify the common-sense conclusion that the Alabama tort for bad faith refusal to pay benefits regulates insurance for purposes of the ERISA savings clause.

Following *Ward,* other courts have found that a state bad faith law is exempt from ERISA preemption if limited to the insurance industry. *Hill v. Blue Cross Blue Shield of Alabama,* 2000 WL 1522841, *3 (N.D.Ala. 2000); *Lewis v. Aetna U.S. Healthcare,* 78 F.Supp.2d 1202 (N.D.Okla. 1999); *Hall v. UNUM*, CV-97-M-1828 (D.Co. 1999, unpublished). This is a logical result[3] due to the *Ward* Court indicating that such laws fall within the ERISA savings clause:

> We discussed this issue in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). That case concerned Mississippi common law creating a cause of action for bad faith breach of contract, law not specifically directed to the insurance industry and *therefore not saved* from ERISA preemption.

119 S.Ct. at 1390 n.7 (emphasis added). This court agrees with Judge Acker's explanation that this is an "acknowledgment by the highest court that if Mississippi's

---

[3]The Court anticipated this result. "We recognize that applying the States' varying insurance regulations creates disuniformities for 'national plans that enter into local markets to purchase insurance.' . . . As we have observed, however, 'such disuniformities . . . are the inevitable result of the congressional decision to 'save' local insurance regulation.'" *Ward*, 119 S.Ct. at 1309 n.6 (internal citations omitted).

cause of action for bad faith breach of an obligation to pay had been allowable only to insurance policies . . . the action would have been saved from ERISA preemption . . .". *Hill,* at *3. This court finds that the Alabama tort for bad faith refusal to pay benefits falls within the ERISA savings clause and is not preempted by ERISA.

Therefore defendants' motion to dismiss is **DENIED** in part and **GRANTED** in part. Defendants' motion to dismiss Plaintiff's claim for breach of contract is **GRANTED**. Defendants' motion to dismiss plaintiff's claim for bad faith is **DENIED**. This court retains jurisdiction under both diversity and federal question. Plaintiff shall have 30 days from this date within which he may amend his complaint to reflect any and all ERISA claims he may choose to file in addition to his claim for bad faith.

**DONE** and **ORDERED** this the __16__ day of November, 2000.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE